FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 10, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOHNATHON B.,[1]

                    Plaintiff,

          v.

LELAND DUDEK, Acting
Commissioner of Social Security,[2]

                    Defendant.

No.   4:24-cv-5108-EFS

**ORDER REVERSING THE
ALJ'S DENIAL OF BENEFITS,
AND REMANDING FOR
MORE PROCEEDINGS**

     Plaintiff Johnathon B. asks the Court to reverse the

Administrative Law Judge's (ALJ) denial of Title 16 social-security-

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last

initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek has been named the Acting Commissioner of Social

Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42

U.S.C. § 405(g), he is hereby substituted as the Defendant.

DISPOSITIVE ORDER - 1

income benefits. Plaintiff claims that his mental impairments are so severe that he is unable to work. Because substantial evidence does not support the ALJ's evaluation of the evaluating psychological opinions, the ALJ erred. This matter is remanded for further proceedings.

## I.     Background

On December 9, 2020, at the age of 23, Plaintiff applied for benefits under Title 16.[3] After the agency denied benefits, ALJ Stewart Stallings held a telephone hearing in August 2023, at which Plaintiff and a vocational expert testified.[4]

## A.     Plaintiff's Testimony

Plaintiff, a high school graduate with an individualized education plan, testified that he has difficulty staying focused and as a result he failed his community-college classes during the two semesters he attended.[5] He stated that he either hyper fixates on random things or

---

[3] AR 169–80.

[4] AR 40–64.

[5] AR 46–50.

lacks the energy to do simple, basic tasks.[6] He shared that he gets easily emotional if he is told he is wrong, that he has difficulty communicating and making connections with others, and that he gets overwhelmed in large settings, often using headphones to block out his surroundings.[7] He stated that chaotic noises overwhelm him, causing him to shut down.[8] He testified that when he gets angry, he will raise his voice and sometimes throw or break things.[9]

Plaintiff shared that he lives with his fiancé and their two toddlers.[10] They share in parenting responsibilities, along with a friend who comes over to help with the children.[11] He testified that, due to his tendency to fixate on a particular thing, he has difficulty remembering

---

[6] AR 56.

[7] AR 54–55.

[8] AR 50–51.

[9] AR 53.

[10] AR 48–49.

[11] AR 48–49, 55.

DISPOSITIVE ORDER - 3

to take out the trash or do self-care, such as showering.[12] Plaintiff acknowledged that he will self-isolate for 2–3 hours a day to ensure he does not get too overwhelmed or worked up.[13] Plaintiff testified that he suffers from depression and when his symptoms are more severe, he loses interest in video games and technology and has difficulty leaving the house, which occurs about six days per month.[14]

## B.     Counseling Records

Plaintiff sought counseling services in December 2021.[15] The initial behavioral health evaluation notes that Plaintiff reported problems with low motivation, irritability, depression, feeling worthless, and worrying, but that he did not report problems with focus, concentration, or discomfort in large groups.[16] Plaintiff was observed with intermittent eye contact, as being pleasant and

---

[12] AR 51–52.

[13] AR 54–55.

[14] AR 55–56.

[15] AR 49, 53, 295–344.

[16] AR 339–41.

adequately dressed, and as groomed with linear thought stream and clear and coherent speech. The counseling notes of record over the next year reflect varying mental-health symptoms:

- January 2022: Plaintiff reported distractedness, self-doubt, limited self-confidence, difficulty going out, and doing less activities.

- March 2022: Plaintiff reported depression, being exhausted, having less patience with his children, and excessive worrying, and he was observed casually dressed and groomed with good insight, normal speech, and motivated to reduce mental-health symptoms.

- May 2022: Plaintiff observed as casually dressed and mildly unkempt with a flat and guarded affect, good insight, and motivated to reduce symptoms.

- August 2022: Plaintiff reported that he was "doing alright" but was having difficulty managing the stress with his fiancé and kids, and he was observed with a flat affect but with good insight and normal speech.

- September 2022: Plaintiff was casually dressed and groomed with good insight, flat affect, and normal speech with latent responses.

- October 2022: Plaintiff presented with unkempt hair, body odor, good insight, restricted affect, and normal speech.

- November 2022: Plaintiff presented as casually dressed with mildly unkept hair and clothes, good insight, and normal affect and speech.

- December 2022: Plaintiff reported a need to work on his impulse control so he could interact better with his fiancé and children, and he was observed as casually dressed and groomed with fair insight, flat affect, and normal speech.

- January 2023: Plaintiff was observed as casually groomed with unkempt hair, well-modulated speech, linear and logical thought process, and a reported mood of within normal limits. The counselor noted that the examining psychologist Kenneth Cole, PsyD, recommended weekly counseling sessions; Plaintiff agreed with the counselor to sessions twice a month when

available. The counselor also noted that Plaintiff was fearful of failing at treatment because he failed in prior treatment.

- February 2023: Plaintiff was concerned about starting the recommended medication and was observed with a flat affect, restricted but linear and logical thought process, and with well-modulated speech.

- March 2023: Plaintiff was observed as casually dressed with unkempt hair, good insight, flat affect, and normal speech.[17]

## C.  Psychological Evaluations

A couple months before initiating counseling in 2021, Plaintiff had a psychiatric disability evaluation with Ryan Marendiuk, Psych. MHNP, which included a clinical interview, mental status examination, and brief intellectual testing.[18] During the clinical interview, Plaintiff said that he had difficulty mentally doing basic tasks because he has a hard time focusing and can be forgetful, and that he has difficulty communicating with people as he does not

---

[17] AR 295–344.

[18] AR 278–86.

understand what people are saying sometimes and that he conveys the wrong message. He also reported difficulty concentrating and that he lacks motivation, is resistant to change, has chronic feelings of worthlessness, and has difficulty controlling his worry. He reported that during a typical day he would wake up and help his fiancé get food ready for their son and then most of the day he would be on his computer while he monitors his son.[19] He also said that he takes a shower once a week to a couple times a month, as he has minimal motivation to shower, which has been a problem since his youth. He shared that he is good with numbers and can handle finances. He also said that he plays video games 10–12 hours of the day. He was observed with appropriate dress and grooming with good eye contact, normal speech, normal mood and congruent affect, no difficulty with attention or concentration with normal insight and normal and logical thought process and content but with no self-esteem. Nurse Marendiuk diagnosed Plaintiff with mild depressive disorder and opined that Plaintiff could understand, remember, and carry out simple and

---

[19] AR 283.

complex instructions; sustain concentration and persist in work-related activity at a reasonable pace; interact with coworkers, superiors, and the public; and adapt to the usual workplace stresses.

A year later, in November 2021, David Morgan, PhD, conducted a psychological evaluation, which included a clinical interview and a mental status examination.[20] During the clinical interview, Plaintiff reported that he lacks motivation to complete even small tasks and thus has difficulty getting things done, that he has difficulty sleeping at times, he did not graduate college, that he has not had regular employment in the last two years, and that he spends time on electronic devices. Dr. Morgan observed Plaintiff with a depressed mood along with a cooperative attitude, normal affect, and normal speech, and within normal limits thought process, orientation, perception, fund of knowledge, concentration, abstract thought, insight, and judgment. Dr. Morgan found Plaintiff's immediate memory was challenged as he performed inadequately on his digit span forward and backward. Dr. Morgan diagnosed Plaintiff with depression, moderate to

---

[20] AR 288–92.

marked severity with daily frequency, and found the following limitations:

- moderately limited in his abilities to learn new tasks, perform routine tasks without special supervision, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, set realistic goals and plan independently, and understand, remember, and persist in tasks by following detailed instructions; and

- markedly limited in his abilities to adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision.[21]

---

[21] AR 289–90.

A year after Dr. Morgan's psychological evaluation, Kenneth Cole, PsyD, conducted a psychological evaluation, which included a clinical interview, a PAI assessment, and a mental status examination.[22] Plaintiff reported a chaotic childhood, occasional trouble falling asleep or waking numerous times, fluctuating energy levels, forgetfulness, low self-esteem, and watching YouTube and playing video games but struggling on occasion to enjoy these activities. He relayed that he had only worked once as a newspaper deliverer and that he is unreliable in completing his chores. During the mental status examination, Dr. Cole observed Plaintiff as cooperative and pleasant with greasy hair, inadequate grooming and hygiene, normal speech, and within normal limits thought process and content, orientation and perception, memory and fund of knowledge, and concentration and abstract thought. Dr. Cole found Plaintiff's "insight and judgment" to be not within normal limits, writing Plaintiff's "insight is poor."[23] As to judgment, Dr. Cole noted that Plaintiff said

_____

[22] AR 364–70.

[23] AR 370.

that if he smelled smoke in a crowded theater, he would "pull the fire alarm and get out."[24] Dr. Cole found that Plaintiff's PAI clinical profile suggested "a person who is unhappy, emotionally labile, and probably quite angry on some level."[25] Dr. Cole diagnosed Plaintiff with bipolar disorder (unspecified), persistent depressive disorder, antisocial personality disorder, and borderline personality disorder. When listing Plaintiff's mental-health symptoms that would affect his ability to work, Dr. Cole listed that Plaintiff's:

- irritability, impulsivity, low self-esteem, and self-destructive behavior would affect his ability to work to a moderate extent.

- anxiety, attention deficits/distractibility, avoidance/isolation, depressive episodes, mood swings, somatization, suicidal ideation, suspiciousness/mistrust, and thought disorder would affect his ability to work to a marked extent.

- anger/physical aggression would affect his ability to work to a severe extent.

---

[24] AR 370.

[25] AR 369.

When completing the Medical Source Statement, Dr. Cole opined that
Plaintiff would be:

- moderately limited in his abilities to learn new tasks, perform
  routine tasks without special supervision, make simple-work-
  related decision, be aware of normal hazards and take
  appropriate precautions, communicate and perform effectively
  in a work setting, and understand, remember, and persist in
  tasks by following very short and simple instructions; and

- markedly limited in his abilities to adapt to changes in a
  routine work setting, maintain appropriate behavior in a work
  setting, set realistic goals and plan independently, and
  understand, remember, and persist in tasks by following very
  short and simple instructions.

## D.     The ALJ's Decision

After the administrative hearing, the ALJ issued a decision
denying benefits.[26] The ALJ found Plaintiff's alleged symptoms, both as

---

[26] AR 15–434. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation
determines whether a claimant is disabled.

described by Plaintiff and by Plaintiff's fiancé, a neighbor, and a friend, were inconsistent with Plaintiff's medical history.[27] As to the medical opinions, the ALJ found:

- the examining medical opinions of Dr. Morgan partially persuasive; and

- the examining medical opinions of Nurse Marendiuk and Dr. Cole and the reviewing opinions of Paul Cherry, PhD, and Maurice Prout, PhD, not persuasive.[28]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since December 9, 2020, the application date and the alleged onset date.

---

[27] AR 24–25, 28.

[28] AR 25–28. Because Plaintiff's appeal focuses on the ALJ's evaluation of the mental-health medical opinions, the Court limits its review to those opinions and does not discuss the physical-health medical opinions.

- Step two: Plaintiff's medically severe impairments were obesity, depression, and personality disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work except:

  he must not be exposed to excessive noise, with warehouse or less type noise preferable. The claimant is limited to simple, routine, and repetitive tasks at reason levels 1 and 2. He must not be subject to a production pace, conveyor belt, or other non-worker-controlled pace. The claimant must have a predictable work environment with no more than brief and superficial interaction with the public, coworkers, and supervisors, but he could occasionally interact with supervisors when necessary for training.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as sweeper-cleaner, industrial; cleaner, industrial; and cleaner, hospital.[29]

---

[29] AR 18–30.

DISPOSITIVE ORDER - 15

1    Plaintiff timely requested review of the ALJ's decision by the

2    Appeals Council and now this Court.[30]

3                    **II.    Standard of Review**

4        The ALJ's decision is reversed "only if it is not supported by

5    substantial evidence or is based on legal error" and such error

6    impacted the nondisability determination.[31] Substantial evidence is

7    "more than a mere scintilla but less than a preponderance; it is such

8    relevant evidence as a reasonable mind might accept as adequate to

9    support a conclusion."[32]

10

11

12    _____

13    [30] AR 1–6.

14    [31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

15    405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

16    *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

17    the court may not reverse an ALJ decision due to a harmless error—

18    one that "is inconsequential to the ultimate nondisability

19    determination").

20    [32] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

21    980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

22

23                            DISPOSITIVE ORDER - 16

# III.   Analysis

Plaintiff argues the ALJ erred by 1) rejecting the disabling opinions of Dr. Morgan and Dr. Cole; 2) failing to conduct an adequate step-three evaluation; 3) improperly discounting Plaintiff's disabling allegations; and 4) failing to conduct an adequate step-five evaluation. The Commissioner argues the ALJ's findings are supported by substantial evidence. As is explained below, the ALJ erred when evaluating the opinions of Dr. Morgan and Dr. Cole.

## A.   Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred when evaluating Dr. Morgan's and Dr. Cole's marked limitations, thereby failing to incorporate these limitations into the RFC. The Court agrees.

---

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

1      1.   <u>Standard</u>

An ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative finding, including whether it was consistent with and supported by the record.[33] The factors for evaluating persuasiveness include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[34] Supportability and consistency are the most important factors.[35] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[36]

---

[33] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

[34] 20 C.F.R. § 416.920c(c)(1)–(5).

[35] *Id.* § 416.920c(b)(2).

[36] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

2.    Dr. Morgan

As mentioned above Dr. Morgan performed a psychological evaluation of Plaintiff and opined that Plaintiff had several moderately limiting and markedly limiting non-exertional abilities.[37] The ALJ found Dr. Morgan's medical opinions partially persuasive.[38] The ALJ agreed that Plaintiff's impairments affect his ability to work, but the ALJ did not fully endorse Dr. Morgan's medical opinions because: 1) "Dr. Morgan based this opinion solely on an interview with the claimant and did not rely on any objective tests of the claimant's cognitive abilities or refer to any other assessments of the claimant's mental impairment conducted by other providers"; and 2) it is "not consistent with the claimant's own statements about what he can and cannot do, which suggest that the claimant is capable of some social interaction, can concentrate on some things for an extended period of

---

[37] AR 288–92.

[38] AR 27.

time, such as video games, and can understand instructions if given sufficient explanation."[39]

The first reason given by the ALJ is not a legitimate reason supported by substantial evidence to find Dr. Morgan's opinion unsupported by either his psychological evaluation or the record. Dr. Morgan's psychological evaluation included not only a clinical interview but also a mental status examination and a review of DSHS records. Dr. Morgan noted Plaintiff's depressed mood and deficits in immediate memory.[40] Moreover, Plaintiff's reported background and symptoms during this clinical interview and mental status examination were largely consistent with those during Plaintiff's evaluation with Dr. Cole and during his counseling sessions.[41] The ALJ

---

[39] AR 27 (internal citations omitted).

[40] AR 288–92.

[41] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Psychologist's opinion was based on a clinical interview and mental status evaluation and partially relied on the claimant's self-reports;

DISPOSITIVE ORDER - 20

failed to consider Dr. Morgan's findings against the longitudinal record, which included behavioral health/counseling records from December 2021 through March 2023. Lastly, Dr. Morgan did not opine that Plaintiff's difficulties with concentration, focus, irritability, and interpersonal interactions were caused by a cognitive impairment, but rather that such were caused by his depression and personality disorder.

The second reason the ALJ discounted Dr. Morgan's more limiting opinions—that they were inconsistent with Plaintiff's reported activities—is also not supported by substantial evidence on this record. Even though Plaintiff reported to Dr. Morgan (and Dr. Cole) that he spends a considerable part of his day playing video games, both psychologists found that Plaintiff would have either moderate or marked limitations in his abilities to perform routine tasks without special supervision, adapt to changes in a routine setting, maintain appropriate behavior in a work setting, and communicate and perform

---

partial reliance on self-reported symptoms was not a valid reason to reject the opinion.).

effectively in a work setting.[42] Therefore, per the evaluating

psychologists, Plaintiff's ability to play video games was not

inconsistent with his reported difficulties hyper fixating on things or

interacting with others.[43] The ALJ's failure to meaningfully evaluate

_____

[42] The "additional explanation" on the form containing the reviewing

opinion of Dr. Prout mistakenly lists that Dr. Morgan's November 2021

psychological evaluation has "no marked limitations in functioning" but

then states "no objective clinical findings presented to sustain any of

the moderate to marked limitations noted in the [medical source

statement]." AR 84, 86. The form also mistakenly states that there was

no follow-up mental-health treatment, but consistent with

Dr. Morgan's recommendation for mental-health treatment, Plaintiff

began counseling two months after Dr. Morgan's evaluation. *Compare*

AR 84–86 *with* AR 290.

[43] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017)

(recognizing the fact the claimant could participate in some daily

activities did not contradict the evidence of otherwise severe problems

that she encountered in her daily life during the relevant period).

DISPOSITIVE ORDER - 22

the consistency between Dr. Morgan's and Dr. Cole's evaluations and opinions caused the ALJ to give undue weight to Plaintiff's ability to play videogames for an extended period.

Moreover, the ALJ did not discuss whether Dr. Morgan's evaluation and opinions were consistent with the later counseling records, which showed inadequate hygiene and grooming, an observation also made by Dr. Cole. In addition, the ALJ did not discuss whether counseling had any impact lessening Plaintiff's symptoms.[44] While the ALJ need not discuss each piece of evidence, here, the ALJ ignored "significant probative evidence that bears on the disability analysis" by largely ignoring the counseling records, which were the primary treatment notes in this record, and by failing to discuss the consistency between Dr. Morgan's and Dr. Cole's psychiatric

_____

[44] *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate.").

evaluations.[45] An ALJ may not cherry pick evidence to support a

conclusion while ignoring other competent evidence in the record.[46] The

ALJ did so in this matter.

> 3.    Dr. Cole

As mentioned above, one year after Dr. Morgan's evaluation,

Dr. Cole completed a psychological evaluation, which included a

clinical interview, a PAI assessment, and a mental status

examination.[47] The ALJ was not persuaded by Dr. Cole's opinions

because his:

> Assessments are not supported by the results of his own
> evaluation, which found the claimant's thought process,
> mood, perception, memory, fund of knowledge, and capacity
> for abstract thought to be normal. Dr. Cole's finding of poor

---

[45] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

[46] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it

is within the power of the Secretary to make findings concerning the

credibility of a witness . . ., he cannot reach a conclusion first, and then

attempt to justify it by ignoring competent evidence in the record that

suggests an opposite result.").

[47] AR 364–70.

insight likewise doesn't follow from the answer given by the claimant to a hypothetical question involving smoke in a crowded theater, which the undersigned finds to be a slight abnormality on a single question that does not support marked limitations. The undersigned also does not find Dr. Cole's opinion to be consistent with the claimant's overall objective record, which shows the claimant to have normal though[t] process, normal concentration, and good memory.[48]

Again, the ALJ focused on the non-supportive aspects of the evaluation without discussing that Dr. Cole determined that Plaintiff had symptoms of anger/physical aggression, anxiety, attention deficits/distractibility, avoidance/isolation, depression, irritability, impulsivity, low self-esteem, mood swings, self-destructive behavior, somatization, suicidal ideation, suspiciousness/mistrust, and thought disorder. These noted symptoms were largely based on Plaintiff's reported symptoms; however, Dr. Cole did observe Plaintiff with inadequate grooming and hygiene, and Plaintiff reported some of these symptoms to Dr. Morgan and was observed with and reported some of these symptoms to his counselor.

---

[48] AR 28.

Second, the ALJ confused Dr. Cole's finding that Plaintiff's "insight is poor" with Dr. Cole's notation as to Plaintiff's judgment, which appeared to be normal. While Dr. Cole did not add comments as to why he found Plaintiff's insight to be poor in that section of his report, in another portion of his report he discussed Plaintiff's PAI clinical profile and that Plaintiff "appears uncertain about major life issues and has little sense of direction or purpose in his life as it currently stands . . . [h]e is also quite impulsive and prone to behaviors likely to be self-harmful or self-destructive."[49] These findings by Dr. Cole support his finding that Plaintiff's insight was poor. The ALJ again cherry-picked evidence to support a conclusion while ignoring other competent evidence.[50] This error was compounded by the ALJ failing to discuss the counseling records, beyond mentioning that Plaintiff was attending mental health counseling to work on managing his conditions.

---

[49] AR 369.

[50] *See Gallant*, 753 F.2d at 1456.

On this record, the ALJ's evaluation of Dr. Cole's and Dr. Morgan's psychological evaluations and the opined moderate and marked limitations is not supported by substantial evidence. On remand, the ALJ is to call a medical expert to offer an opinion as to Plaintiff's mental-health impairments, with the benefit of the psychological evaluations and the counseling records.

## B.    Other issues: the ALJ is to reevaluate.

The ALJ found that Plaintiff did not meet or equal a listing and that Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were inconsistent with his "medical history, which does not show the kinds of serious symptoms, amount of treatment, and level of dysfunction that would be expected were the claimant as limited as he alleges."[51] Because of the ALJ's errors when evaluating Dr. Morgan's and Dr. Cole's medical opinions, this matter is remanded for a new sequential evaluation.

On remand, the ALJ is to reevaluate Plaintiff's reported symptoms. When doing so, if the ALJ again discounts Plaintiff's

---

[51] AR 24.

reported symptoms because he has "the capacity to regularly attend mental health counseling to address and working [sic] on managing his conditions,"[52] the ALJ is to meaningfully explain how Plaintiff's once-a-month counseling sessions, during which Plaintiff was often observed with hygiene issues, is inconsistent with Plaintiff's reported symptoms, which included getting off-task and becoming fixated on things other than his hygiene. Moreover, the ALJ may not ignore the coping mechanisms Plaintiff employed to manage his symptoms.[53]

Also, on remand, the ALJ is to call a medical expert to offer an opinion as to 1) whether Plaintiff's low energy stems from Plaintiff's depression or another source, and 2) whether Plaintiff's ability to concentrate on video games is consistent with basic work abilities. Both Dr. Morgan and Dr. Cole were aware of Plaintiff's extended time spent playing video games but still found moderate or marked limitations with learning new tasks, performing routine tasks without special

_____

[52] AR 24.

[53] *Glanden v. Kijakazi*, 86 F.4th 838, 845 (9th Cir. 2023) (citing SSR 16-3p).

supervision, adapting to changes in a routine work setting,

communicating and performing effectively in a work setting, and

maintaining appropriate behavior in a work setting. Finally, if the ALJ

again discounts Plaintiff's reported symptoms because he lacks

significant work history, the ALJ is to consider whether Plaintiff's age

and mental-health impairments contributed to his lack of significant

work history.[54]

## C.    Step Five: vocational expert testimony is needed on remand.

Plaintiff argues the ALJ erred at step two because 1) the RFC's

limitation to simple, routine, and repetitive tasks precludes the

performance of level-two reasoning jobs, yet two of the three identified

jobs require level-two reasoning; and 2) the RFC, which limits Plaintiff

to brief and superficial interaction with supervisors, prevents Plaintiff

from advancing past the training period of a job. In response, the

Commissioner argues that neither of these arguments have merit.

---

[54] *See Lingenfelter*, 504 F.3d at 1038; 20 C.F.R. § 416.929 (work record

can be considered in assessing reported symptoms).

The Ninth Circuit's decision in *Rounds v. Commissioner Social Security Administration* guides the first issue.[55] Here, as in *Rounds*, there may be an apparent conflict between Plaintiff's RFC, which limits him to "simple, routine, and repetitive tasks at reason levels 1 and 2," and two of the jobs selected by the vocational expert and adopted by the ALJ, which require level-two reasoning.[56] Level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. . . ."[57] In *Rounds*, the Ninth Circuit determined that "[o]nly tasks with more than one or two steps would require 'detailed' instructions."[58] Therefore, there appears to be a conflict between limiting Plaintiff to simple tasks but then allowing him to perform a job requiring level-two reasoning. On remand, the vocational expert is to address whether

---

[55] 807 F.3d 996, 1003–04 (9th Cir. 2015).

[56] The two identified jobs that are level-two reasoning are: cleaner, industrial (DOT 381.687-018) and cleaner, hospital (DOT 323.687-010).

[57] Dictionary of Occupational Titles, Appendix C.

[58] 807 F.3d at 1004.

there is a conflict between the RFC, if it limits Plaintiff to "simple, routine, and repetitive tasks," and a job requiring level-two reasoning.

To address Plaintiff's second concern, the ALJ on remand is to obtain vocational expert testimony as to whether an RFC limiting Plaintiff to occasional interaction with supervisors during the training period will preclude the-then identified jobs.[59]

## IV. Conclusion

Plaintiff establishes the ALJ consequentially erred. The ALJ is to develop the record, including calling a medical expert and a vocational expert, and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

[59] *See generally Leitz v. Kijakazi*, 2023 WL 4342114 (9th Cir. July 5, 2023) (unpublished opinion).

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 16**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 10th day of April 2025.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 32